# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Michelle O'Day,                                              Case No. 3:17CV1980

           Plaintiff

           v.                                                 **ORDER**

Commissioner of Social Security,

           Defendant

       This is a Social Security case in which the plaintiff, Michelle O'Day, appeals from the Commissioner's decision denying her application for benefits.

       An administrative law judge found that O'Day suffered from multiple severe impairments, including obesity, major depressive disorder, and post-traumatic stress disorder, and a non-severe case of fatty liver. (Doc. 11, PageID 98–99).

       After concluding that these impairments did not meet or medically any of the Listings of Impairments, the ALJ ruled that O'Day had the residual functional capacity to perform light work, provided that the work involve only simple, routine tasks, and that O'Day have only occasional contact with coworkers and no contact with the public. (*Id.*, PageID 99 –101). Because a significant numbers of such jobs existed in the national economy that O'Day could perform, the ALJ held that O'Day was not disabled. (*Id.*, PageID 106 –07).

       Now pending are Magistrate Judge Limbert's Report and Recommendation (Doc. 23), which recommends that I affirm the Commissioner's decision; O'Day's objections (Doc. 25); and the Commissioner's response (Doc. 26), which does not address the merits of O'Day's

objections or, more notably, the alleged factual errors that O'Day identifies in the Magistrate Judge's R&R and the Commissioner's own merits briefs.

On de novo review of the R&R under 28 U.S.C. § 636(b)(1), I overrule the objections, adopt the R&R as the order of the court, and affirm the Commissioner's decision denying O'Day's application for benefits.

## Discussion

### A. Additional Step 2 Impairments

Magistrate Judge Limbert first ruled that the ALJ did not err by failing to identify O'Day's incisional hernias, back pain, sleep apnea, hypertension, and learning disability as additional impairments at Step 2 of the five-step sequential analysis. (Doc. 23, PageID 760–63).

According to the Magistrate Judge, O'Day "point[ed] to no medical records establishing that these conditions were medically determinable impairments, that they were impairments for which she received treatment, or that they were impairments that meet the required severity under Step Two." (*Id.*, PageID 761). The Magistrate Judge also concluded that any error in failing to identify these impairments as "severe" at Step 2 would have been harmless, both because the ALJ: 1) found at least one severe impairment and continued with the sequential analysis; and 2) gave great weight to the opinion of a state agency examining physician who opined that O'Day could perform limited light work "with chronic low back and bilateral ankle pain, anxiety/depression, and morbid obesity." (*Id.*, PageID 762–63).

In part B of her objections, styled "Medically determinable impairments," O'Day contends that Dr. Lakin, a state agency examining physician, diagnosed her with "chronic low

back and bilateral ankle pain," and that this diagnosis ought to have sufficed to prove that she suffered from additional severe impairments. (Doc. 11, PageID 505).[1]

But the medical records reflect that this was Dr. Lakin recording O'Day's own subjective complaints about her back and ankle pain. (*Id.*) ("Claimant is a 42-year-old Caucasian female *who reports* impairment of function secondary to chronic low back and bilateral ankle pain") (emphasis supplied). For his part, Dr. Lakin observed that O'Day had normal range of motion in her spine, both hips, and both ankles. (*Id.*, PageID 504).

Furthermore, O'Day does not point to any medical records establishing that she received treatment for her back and ankle complaints or that they were sufficiently severe to qualify as medically determinable impairments. As Magistrate Judge Limbert pointed out, "[a]n impairment is not considered severe when it 'does not significantly limit one's physical or mental ability to do basic work activities.'" (Doc. 23, PageID 761) (quoting 20 C.F.R. § 404.1521(a)).

---

[1] O'Day's objections take the blunderbuss approach, listing or referring to at least a dozen of alleged errors, misstatements, and deficiencies in both the ALJ's decision and the R&R. In most cases, O'Day does not explain how these alleged errors relate to (or undermine) the Magistrate Judge's R&R. For that reason, I have focused on those objections that clearly relate to the Magistrate Judge's findings and, as well, on those that otherwise appear to raise a significant issue in light of the record and controlling law. To the extent that this order does not specifically address an error cited by O'Day, I have found all such errors to be insufficient to overturn the Commissioner's decision.

Especially where, as here, plaintiff's counsel adopts such an undifferentiated blunderbuss approach, it is essential that the Commissioner's counsel take the time and make the effort to address the objections. Such did not occur here, leaving me to puzzle through the objections and running the risk of my finding that something in the objections has merit where otherwise, if I had the benefit of the opposing view, I would find without merit.

With no evidence showing how O'Day's additional impairments significantly limited her ability to work, the ALJ did not err by failing to deem those additional impairments to be "severe" at Step 2.[2]

Alternatively, I agree with the Magistrate Judge that any failure to identify additional severe impairments at Step 2 would have been harmless error, given the ALJ's decision to give great weight to the opinions of Drs. Lakin and Lehv that O'Day could perform light work notwithstanding her back and ankle pain. (Doc. 23, PageID 762–63).

### B. Obesity-Related Objections

Section B.2 of O'Day's objections contains five pages of argument under the heading "Obesity." In this section, O'Day alludes to topics as varied as whether her obesity constitutes a severe impairment, whether she met or medically equaled a listed impairment, and the ALJ's RFC determination. I discuss the most salient issues below.

First, O'Day contends that the opinions of Drs. Lakin and Lehv cannot be "substantial evidence" for the ALJ's RFC determination. (Doc. 25, PageID 784–85). This is so, O'Day maintains, because these state agency physicians' reports, prepared in November, 2014, "were so remote to" the date of the ALJ's decision that they are "dated, inconclusive, [and] failed to consider the complete exhibit file." (*Id.*, PageID 785). O'Day contends that the ALJ should have discounted these opinions and given greater weight to "treating source opinions much more recent, i.e., Dr. Alanis[.]" (*Id.*).

This objection, cursory as it is, has no merit.

Magistrate Judge Limbert persuasively explained why the ALJ gave sufficiently good reasons for according less weight to Dr. Alanis's opinions. (Doc. 23, PageID 767, 768–70). He

---

[2] Indeed, O'Day admitted at the hearing that she had no diagnostic testing performed on her hips. (Doc. 11, PageID 145).

also documented why there was a substantial evidentiary basis for affording greater weight to the agency physicians' opinions. (*Id.*, PageID 770–71).

O'Day's objections, varied as they are, provide no basis to disturb the ALJ's decision or reject these recommendations from the Magistrate Judge.

Second, O'Day argues that the ALJ failed to explain his conclusion that O'Day, despite her "morbid obesity," had the RFC to perform light work with the additional restrictions that the ALJ identified at Step 4. (Doc. 25, PageID 785–86). The thrust of the objection seems to be that O'Day's obesity should have translated into more, or more substantial, work-related limitations

The text of the ALJ's decision (Doc. 11, PageID 98–100, 103–05), and the Magistrate Judge's persuasive elucidation of the basis of that decision (Doc. 23, PageID 765, 767), refute O'Day's objection.

The ALJ recognized O'Day's morbid obesity – specifically mentioning, *inter alia*, her BMI of 52 – as well as the opinion evidence suggesting that she could still perform a limited range of light work despite that obesity. (Doc. 23, PageID 765). The ALJ also meticulously recounted O'Day's own testimony, as well as her statements to various doctors, that she was able to perform various activities of daily living. (Doc. 11, PageID 99 –100, 103 –05). That O'Day believes the ALJ improperly weighed and evaluated that evidence is no basis to overturn the ALJ's decision.

I agree with the Magistrate Judge that the ALJ "adequately explained his reasons for the limited light exertional level and [that] substantial evidence supports this RFC." (Doc. 23, PageID 765).

## C. RFC-Specific Objections

In the next section of her objections, O'Day claims that the ALJ's RFC determination conflicts with certain of his factual findings. (Doc. 25, PageID 788–92). Most critically, O'Day contends, is the supposed conflict between the ALJ's decision to afford great weight to Dr. Lakin's opinion while simultaneously rejecting Lakin's conclusion that O'Day could walk/stand for only two hours in an eight-hour day. (*Id.*, PageID 788 –89).

Once again, the Magistrate Judge persuasively explained why this objection has no merit:

It is true that the ALJ did not adopt Dr. Lakin's 2-hour stand/walk limitation. Tr. at 19. However, the ALJ did consider the sedentary exertional level of work as evidenced in the hearing transcript when he presented to the VE a hypothetical individual with a RFC that included the limitation to sedentary level work. *Id*. at 68. The ALJ also asked Plaintiff at the hearing if she had any diagnostic testing on her back or ankles, and she responded that she had not. *Id*. at 63. She indicated that she had trouble standing because her right hip wanted to give out, but she acknowledged that she had no testing or treatment on her hip. *Id*. Further, an ALJ is not required to adopt every facet of an opinion when he attributes it great weight. [Case citations omitted]. Moreover, the ALJ's initial review of Dr. Lakin's opinion provides insight into his reason for not adopting the limitation as he noted that Dr. Lakin indicated that Plaintiff attributed her back and ankle pain to working in childcare and to her morbid obesity, and Plaintiff took no pain medications and required no surgeries or injections to her back. Tr. at 21. He further noted that Plaintiff reported being able to cook, care for herself and two minor children on her own as a single parent, she could drive and do light shopping and cleaning, and she was able to walk from her car to a mall. *Id*.

This passage makes clear that the ALJ not only had no obligation to adopt every limitation that Dr. Lakin imposed, but also that he had substantial record support for declining to adopt Dr. Lakin's stand/walk limitation.[3]

---

[3] Throughout her objections, and specifically with regard to the ALJ's RFC determination, O'Day emphasizes the Magistrate Judge's alleged misstatement of fact that O'Day "was prescribed no pain medication." (Doc. 25, PageID 783, 787, 789, 793). It is undisputed that, in November, 2013, Dr. Alanis prescribed 800 mg of Motrin. (Doc. 11, PageID 596). Contrary to the objections, however, the Magistrate Judge did not say that O'Day had *never* been prescribed pain medication. What the Magistrate Judge found – and what O'Day does not dispute – is that: 1) O'Day told Dr. Lakin in November, 2014 that she was not taking pain

Third, and in further support of her "conflict" argument, O'Day contends that Dr. Alanis's opinion would have supported adopting a stand/walk limitation along the lines of that opined by Dr. Lakin. (Doc. 25, PageID 789). But the ALJ declined to give Dr. Alanis's opinion controlling weight because it was "inconsistent with the medical record as a whole, it is unsupported by the medical record, and the opinion contrasts sharply with the other opinions of record." (Doc. 11, PageID 105).

The Magistrate Judge concluded that these were good reasons with substantial support in the record. I agree and adopt those findings as my own. Again, that O'Day believes that certain evidence relied on by the ALJ could have supported a decision in her favor (*see* Doc. 25, PageID 790) does not mean there was no substantial evidence for the decision that the ALJ actually issued.

### D. Activities of Daily Living

In section D of her objections, O'Day argues that the evidence of her activities of daily living should have led the ALJ to conclude that she was, in fact, disabled. (Doc. 25, PageID 793–94). While I agree that some of this evidence is not inconsistent with a finding that O'Day was disabled, I also agree, as I explained *supra*, with the Magistrate Judge that much of it supports the ALJ's conclusion that O'Day's daily living activities showed she was capable of gainful employment.

Again, because the ALJ's decision fell within a permissible range of reasonable decisions, this objection has no merit.

---

medication; and 2) consequently, Lakin noted in his contemporaneous report that O'Day "currently takes no pain medication." (PageID 25, 503, 754). No part of the Commissioner's decision or the Magistrate Judge's R&R rests, as O'Day would have it, on the false premise that O'Day never took pain medication.

### E. Mental RFC

Finally, O'Day objects that the ALJ's limiting her to occasional interactions with coworkers and supervisors does not adequately account for her history of hallucinations. (Doc. 25, PageID 795).

The Magistrate Judge dealt with this issue at length, noting the mixed evidence as to the frequency of O'Day's hallucinations and her recurring periods of not taking her medications as prescribed. (Doc. 23, PageID 772–78). In particular, the Magistrate Judge noted the many occasions on which O'Day had denied to her treatment providers that she was then or had recently experienced hallucinations. (*Id.*, PageID 772–75). On some days, moreover, O'Day both claimed to have experienced, and denied having experienced, hallucinations.

In light of this evidence, and in the absence of medical "reports or records address[ing] the impact, if any, that the hallucinations had on Plaintiff's work-related abilities," the Magistrate Judge concluded that the ALJ had a substantial evidentiary basis for limiting O'Day to occasional interactions with her coworkers and supervisors. (*Id.*, PageID 775).

I agree with the Magistrate Judge's findings and adopt them as my own. Indeed, all of the foregoing evidence – as well as O'Day's ability to care for her children and her ability, though assuredly somewhat limited, to be around other – supports the ALJ's mental RFC determination.

**Conclusion**

It is, therefore,

ORDERED THAT:

1. Plaintiff's objections to the Magistrate Judge's Report and Recommendation (Doc. 25) be, and the same hereby are, overruled;

2. The Magistrate Judge's Report and Recommendation (Doc. 23) be, and the same hereby is, adopted as the order of the court; and

3. The Commissioner's decision be, and the same hereby is, affirmed.

So ordered.

/s/ James G. Carr<br>Sr. U.S. District Judge